**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| In Re:<br>Christopher Randall Johnson,<br><br>Debtor,<br>_____<br>Julia A. Christians, Trustee,<br><br>Plaintiff,<br><br>v.<br><br>EMILY E. JOHNSON, HEIDI HJELLE, GREGORY HJELLE, RYAN GILBERTSON, PROVIDENCE DEVELOPMENT, LLC, PROVIDENCE MANAGEMENT COMPANY, LLC, CHETEK EXPRESS, INC., R.L. JOHNSON NUMISMATICS, INC., PROVIDENCE TWIN CITIES LLC, JRS REAL ESTATE PARTNERS LLC, and WILDCAT RANCH, LLC,<br><br>Defendants. | Bky, 20-41472 (KLT)<br><br>Adv. _____<br><br><br>**COMPLAINT** |

Julia Christians, Trustee ("Trustee") of the bankruptcy estate of Christopher Randall Johnson ("Debtor" or "Johnson"), as for her Complaint against Emily E. Johnson, Heidi Hjelle, Gregory Hjelle, Ryan Gilbertson, Providence Development, LLC, Providence Management Company, LLC, Chetek Express, Inc., R.L. Johnson Numismatics, Inc., Providence Twin Cities, LLC, JRS Real Estate Partners LLC, and Wildcat Ranch, LLC states and alleges as follows:

1.      The Trustee is the duly appointed Chapter 7 trustee of the bankruptcy estate of the Debtor.

2591286                                                    1

2. This bankruptcy case was commenced on May 29, 2020 ("Petition Date") by filing a voluntary Chapter 7 petition.

3. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334.  This case arises under 11 U.S.C. §§105, 541, 544, 548 and Fed. R. Bankr. P 7001.

**DEFENDANTS**

5. Christopher Johnson ("Debtor" or "Johnson") is the debtor in this case.

6. Emily E. Johnson ("E. Johnson") is the Debtor's non-filing spouse.

7. Heide Hjelle ("H. Hjelle") is a resident of the State of Minnesota, and is the Debtor's sister.

8. Gregory Hjelle ("G. Hjelle") is a resident of the State of Minnesota, and is the Debtor's brother-in-law.

9. Ryan Gilbertson ("Gilbertson") is currently incarcerated in federal prison in Wisconsin.  He is the Debtor's cousin, and gave the Debtor power of attorney over all of his business affairs while he is incarcerated.

10. Providence Development, LLC ("Providence Development") is a Minnesota limited liability company with a principal place of business at 8615 Eagle Creek Circle, Savage, Minnesota 55378.

11. Providence Management Company, LLC ("Providence Management") is a Minnesota limited liability company with a principal place of business located at 8615 Eagle Creek Circle, Savage, Minnesota 55378.

2591286

12.     Chetek Express, Inc. ("Chetek") is a Wisconsin corporation with a principal place of business at 8615 Eagle Creek Circle, Savage, MN 55378.

13.     R.L. Johnson Numismatics, Inc. ("Numismatics") is a Minnesota corporation with a principal place of business at 8615 Eagle Creek Circle, Savage, Minnesota 55378.

14.     Providence Twin Cities LLC ("Providence Twin Cities"), is a Minnesota limited liability company with a principal place of business at 8615 Eagle Creek Circle, Savage, Minnesota 55378.

15.     JRS Real Estate Partners LLC ("JRS"), is a Minnesota limited liability company with a principal place of business at 8615 Eagle Creek Circle, Savage, Minnesota 55378.

16.     Wildcat Ranch, LLC, is a Minnesota limited liability company with a principal place of business located at 8615 Eagle Creek Circle, Savage, Minnesota 55378.

## SUMMARY OF THE ACTION

17.     On August 7, 2017, the United States District Court for the District of Minnesota confirmed an arbitration award and entered a $1,502,000 judgment against the Debtor (the "Judgment").  In a scheme to frustrate, hinder, delay, defraud and impede enforcement of the Judgment, the Debtor fraudulently transferred his assets in a series of transactions with his wife, his sister, his brother-in-law, his cousin, and numerous companies owned and controlled by him and his family members (all of which are named as defendants herein) to make it appear as if he is judgment proof.

18.     Acting with actual or constructive fraudulent intent to frustrate enforcement of the Judgment, the Debtor made transfers totaling millions of dollars that he concealed through a network of family members and shell companies that he dominates and controls and uses for his and his family's personal benefit. The main vehicle the Debtor used to carry out this

fraud were fictitious loans that he issued to himself and his family members from alter ego companies dominated and controlled by him that do not bear commercially reasonable interest and that have no commercially reasonable maturity date. The Debtor used these fictitious loans so that his alter ego companies, in particular Providence Development, LLC, could avoid paying him distributions that would be subject to the Judgment.

19. The Debtor's scheme is characterized by numerous "badges of fraud," including transfers to family members for no consideration and financial transactions that make no commercial sense. The transfers among the Debtor and his insiders began when the Debtor was the Respondent in the FINRA arbitration and have continued through to the present. Defendants acted with intent to defraud in that the transfers were made for the purpose of concealing the Debtor's assets so that he appears insolvent, while retaining control of his property after the transfers. As a result of Defendants' fraudulent scheme, Morgan Stanley was only able to collect less than $100,000 of the $1,502,000 Judgment.

20. To aid enforcement of the Judgment, the judge in the underlying action in which the Judgment was entered appointed a Receiver to investigate the Debtor's financial transactions and to collect his assets. After an extensive accounting, the Receiver reported to the Court that he was unable to collect the Judgment because of the Debtor's numerous asset transfers to his family members and LLCs, which the Receiver stated were all tainted by "subterfuge" and were "distributions that are now being attempted to be disguised as loans." To satisfy the Judgment, the Receiver "recommend[ed] that claims be pursued against Providence Development, LLC, other related entities and related persons including Emily Johnson, Heidi Hjelle, and Gregory Hjelle." The Receiver's findings evidence Defendants'

2591286                                     4

clear fraudulent intent, pervasive use of alter egos to hide assets, and numerous other "badges of fraud" to frustrate, hinder, and impede enforcement of the Judgment.

21.     The Receiver determined that the Judgment could not be collected absent lawsuits against the Debtor's family members and their alter ego companies because of the numerous fraudulent transfers engaged in by them.

22.     This action aims to untangle the web of fraudulent asset transfers orchestrated by the Debtor, his family members and their alter ego business entities that thus far have succeeded in frustrating Morgan Stanley's collection on the Judgment, and now the Trustee's efforts to administer estate assets.

23.     Judgment should be entered against each of the Defendants, jointly and severally, for an amount to be determined at trial (the amount of the claims filed in this case exceeds $3.1 million).

## STATEMENT OF FACTS

24.     On September 30, 2013, Morgan Stanley commenced an arbitration proceeding with the Financial Industry Regulatory Authority ("FINRA") against the Debtor for breach of five promissory notes (the "Notes") made between November 2008 and December 2011 which became due when Johnson terminated his employment with Morgan Stanley in October 2012.

25.     On December 5, 2016, the FINRA arbitration panel entered an award finding the Debtor liable to Morgan Stanley for $1,502,000 in compensatory damages (the "FINRA Award").

26.     On April 4, 2017, due to the Debtor's failure to make any payments to satisfy the FINRA Award, Morgan Stanley filed a motion to confirm the FINRA Award. The Court

confirmed the Award and entered Judgment for $1,502,000 against Johnson on August 7, 2017. See Morgan Stanley v. Johnson, 17-cv-1101 (PAM/TNL), U.S. District Court for the District of Minnesota (the "Underlying Action").

27.     The only payments received by Morgan Stanley in satisfaction of the Judgment was $94,098.37 received in October 2018 from a garnishment served on Providence Development, LLC, and $2,879.85 from a bank garnishment. Crediting these payments against the $1,502,000 Judgment resulted in an unpaid principal amount of $1,405,021.78, plus post- judgment interest.

28.     Morgan Stanley engaged in extensive efforts to enforce the Judgment. In addition to serving garnishments in October 2017 and June 2018, such as the one that resulted in the $94,098.37 payment referred to immediately above, Morgan Stanley served subpoenas for documents on the Debtor and on his main operating company, Providence Development.

29.     In response to Morgan Stanley's subpoenas, the Debtor and Providence Development, produced financial records which showed a number of highly suspicious transactions or assets available for collection, including the following:

a)      Providence Development – the Debtor's main operating company and his alter ego -- produced a Balance Sheet as of June 5, 2018 which showed that it paid $700,000 to an entity named Providence Management. Morgan Stanley subsequently learned that Providence Management is a shell company ostensibly owned by E. Johnson and H. Hjelle, that does no real business and that is an alter ego of the Debtor and his family used to funnel $700,000 out of Providence Development, LLC to the detriment of the Debtor's creditors, including Morgan Stanley.

2591286                                          6

b)        Providence Development's records also showed that $200,000 was paid to Chetek.  Morgan Stanley subsequently learned that this is another alter ego of the Debtor's ostensibly owned  in part by E. Johnson that the Debtor used to get money out of Providence Development in violation  of Morgan Stanley's rights.

c)        Providence Development produced its 2016 tax returns, which showed that it owed $488,361 to the Debtor as of year-end 2016.   Although this loan receivable was an asset of the Debtor that should have been paid to Morgan Stanley pursuant to the garnishment served on Providence Development in 2017, Providence Development only paid $94,098.37 to Morgan Stanley.

d)        On August 6, 2018, the Debtor's counsel wrote a letter to Morgan Stanley's counsel which stated that "Providence Development, LLC finished making the last of these loan payments [to the Debtor] in 2018." However, the garnishment that Morgan Stanley served on Providence Development in 2017 forbid Providence Development from making any payments to the Debtor, including the payments referred in paragraph 30(e) below.

e)        On September 13, 2018, Debtor's counsel produced to Morgan Stanley's counsel a spreadsheet of the loan repayments that Providence Development made to the Debtor. It showed that subsequent to entry of the Judgment and service of the  2017 garnishment, Providence Development paid over one hundred and fifty thousand dollars to the Debtor, including $96,760 on October 4, 2017; $15,000 on November 20, 2017; $54,673 on January 9, 2018, and $6,890 on May 14, 2018. Despite the Debtor's receipt of this money, he paid nothing to reduce the Judgment.

f)      The Debtor's September 13, 2018 spreadsheet states that as of June 30, 2018, Providence Development still owed him $126,763.24 on the loans that he previously made to it. This contradicts the August 6, 2018 letter from Debtor's counsel, which states that the loan was fully paid off in 2018, and which shows that the Debtor plays fast and loose with the facts.  To avoid paying the loan balance to Morgan Stanley, the Debtor and Providence Development claimed that the $126,762 debt was somehow converted into preferred equity and is no longer a debt. No legal justification existed for this transparent change in nomenclature intended to avoid compliance with Morgan Stanley's garnishments.

g)      The Debtor produced documents showing that he is connected with a public company named Sun BioPharma, which paid him wages of $95,518 in 2015.  He also sold varying amounts of Sun BioPharma stock but it is unknown what he did with the proceeds.  Johnson's records also show that he owns an unknown amount of gold coins, some of which he also sold, but for which he never accounted.

h)      The financial records of Providence Development show that it is a profitable company.  According to its June 5, 2018 financial statement, it had $490,000 in an account at Fidelity and $80,758 in gold and silver coins.  It also had  net income of $811,176 in 2017. Yet, as noted below, it claims that it made no distributions to the Debtor, that it will not make any distributions to him, and that the distributions made to him were only "loans" which did not require repayment of principal or interest for 30 years. These assertions  are false.

30.   From the financial records produced by the Debtor and Providence Development, and their refusal to comply with the Judgment and related garnishments, it was clear to Morgan Stanley that the Debtor had the assets to pay off the Judgment but that he

would engage in numerous maneuvers to avoid paying it. Faced with this recalcitrant judgment debtor bent on doing everything possible to frustrate enforcement of the Judgment, on April 26, 2018, Morgan Stanley filed a motion in the Underlying Action to appoint a Receiver over Johnson, as a Judgment Debtor, and to impose a charging order on the distributions to him made by Providence Development and his other LLCs. The Court granted Morgan Stanley's motion in a decision dated September 27, 2018 in the Underlying Action and appointed Timothy Becker of Lighthouse Management Group, Inc., as the Receiver.

31.     From October 1, 2018 through February 2019, the Receiver conducted an exhaustive examination of the Debtor's assets. On February 28, 2019, the Receiver issued a Receiver Report and Recommendations filed in the Underlying Action. The Receiver's Report is summarized below.

**The Receiver Found Johnson Is Conducting and Profiting From A Fraudulent Scheme To Frustrate Morgan Stanley's Collection of This Court's Judgment**

32.     The Receiver found: "While Johnson claims to own very few assets, his personal financial statements provided to various lenders disclosed assets in excess of $10 million as of March 2017 and more than $3.5 million as of May 2018." Receiver Report at 4.

33.     Specifically, the Receiver found as follows:

> "As of May 15, 2018, … Johnson valued his personal residence at $1.3 million and disclosed an additional $900,000 of investments in real estate. In March 2017, Johnson reported to Bridgewater Bank that he held more than $4.1 million of marketable and non-marketable securities and more than $3.3 million of investment real estate. The banker's notes as of August 1, 2018 state that Johnson had sold a large portion of his investment real estate and transferred assets to his wife." Id.

2591286

9

The banker's notes referred to by the Receiver further stated that "Johnson or his attorney reported that they believe 'they can continue to fight the judgment and reduce the amount.'" Id. at 4-5.

**The Receiver Found That Johnson, His Wife (Emily Johnson), His Sister (Heidi Hjelle) and His Brother-in-Law (Gregory Hjelle) Dominate and Control Providence Development LLC, Providence Investments LLC, Providence Management Company LLC and Chetek Express Inc. and Use Them As Alter Egos**

34.	The Receiver found:

> "Johnson receives substantial benefits from Providence Development, LLC and Providence Investments LLC. In excess of $1.5 million in transfers were made to, on behalf of, or for the benefit of Johnson in 2017-2018 – an amount which would have been sufficient to satisfy the judgment to Morgan Stanley…. Johnson's transactions with Providence Development, LLC and related LLCs have been a subterfuge and that claims exist related to these activities and should be pursued." Receiver Report at 5 and 8.

35.	Specifically, the Receiver found that these monies "are distributions that are now being attempted to be disguised as loans" in an effort to avoid payment to Morgan Stanley. Id.

> "In a series of transactions during 2017, Providence Development, LLC loaned $700,000 to Providence Management Company LLC, which is reportedly owned equally by Emily Johnson and Heidi Hjelle (Johnson's sister and principal accountant for Providence Development LLC). These loans contain similar terms to the loans to Johnson, namely, no required payments until maturity, which is 20 years from the date of origination, and accrual of a below market interest rate of 2.5% annually.  An additional $200,000 was loaned apparently under similar terms to Chetek Express Inc., another entity for which Emily Johnson has an ownership interest. Under oath, Johnson admitted that this loan does not require any payments, although he was unsure whether the loan was actually documented." Id. at 6.

36.	Heidi Hjelle (Johnson's sister) was the Manager listed with the State of Minnesota for Providence Management Company LLC, and personally engaged in the

fraudulent conveyances of her company referred to herein. As such, she is personally liable for the fraudulent transfers engaged in by Providence Management.

37.     Gregory Hjelle (Johnson's brother-in-law) was the Manager listed with the State of Minnesota for Providence Development, LLC, and personally engaged in the fraudulent conveyances of his company referred to herein. As such, he is personally liable for the fraudulent transfers and other wrongful conduct engaged in by Providence Development.

38.     The Receiver's Report further noted that Providence Development's Control Agreement required that net income "shall be distributed to the Members every (3) months." Despite this agreement, Johnson told the Receiver that no distributions would be made because such cannot be received by him without payment of the Judgment to Morgan Stanley. Id. at 7.

> "Based on the facts and circumstances surrounding the payments, the Receiver is of the opinion that the payments were made with the intent to benefit Johnson while avoiding making distributions that would be recoverable to pay the debt to Morgan Stanley." Id. at 7.

**Fraudulent Transfers Involving Johnson's Wife Emily Johnson**

39.     With regard to Johnson's wife, Emily Johnson, the Receiver found that she dominates and controls additional business entities that aided Johnson's scheme to frustrate enforcement of the judgment:

> a.     "During the course of our investigation, the Receiver learned that Johnson's wife, Emily Johnson, has an ownership interest in businesses – in particular, Providence Management Company, LLC – that have been the beneficiary of significant cash transfers from Providence Development, LLC." Receiver's Report at 13.
>
> b.     "Chetek Express Inc., an entity for which Emily Johnson has a reported 35% ownership and Chris Johnson reportedly holds no

interest (but holds the title of CEO), received loans totaling $200,000 sometime between June 5 and October 22, 2018. Documentation for this loan has not been produced. Johnson, however, stated, that monthly payments are not required, and was unsure if the loan was ever documented." Receiver Report at 14.

c.  "Capital Investments 3020 LLC was formed on September 25, 2018. Emily Johnson is reportedly the sole member.  On September 27, 2018 (the same day the Receivership Order was entered), a wire transfer in the amount of $685,000 was received by Capital Investments 3020, LLC.  On September 28, 2018 the same amount was wired out of the account of Capital Investments 3020, LLC to an unknown entity. Subsequent transfers from Capital Investments 3020 LLC include payments to Chetek Express Inc. …," another entity owned by Emily Johnson and controlled by Christopher Johnson.

Receiver Report at 15.

### Fraudulent Transfers Involving Johnson's Cousin Ryan Gilbertson

40.  With regard to Johnson's cousin Ryan Gilbertson (a convicted felon), the Receiver found:

"Ryan Gilbertson is Chris Johnson's cousin. They have engaged in a significant number of cash transactions and investments totaling millions of dollars…. On June 26, 2018, Gilbertson was convicted of 14 counts of wire fraud, one count of conspiracy to commit securities fraud, and six counts of securities fraud in connection with trading activities. On April 12, 2018, 150,000 shares of Northern Oil and Gas stock was transferred into the Fidelity Investments account of Providence Development LLC from an unknown source. Johnson represented that he is one of the trustees of Gilbertson's trust and will conduct business as trustee of the trust while Gilbertson is incarcerated." Receiver Report at 17.

41.  More specifically, the Receiver found:

"1. Gilbertson reportedly loaned $1,000,000 to Johnson.  Johnson stated $300,000 remains unpaid, but secured by the stock held in Providence Investments LLC. Johnson has provided no evidence of the outstanding claimed balance of the loan. 2. Gilberston is reportedly a 49% owner of Providence Twin Cities – No. 7/9, LLC

with Johnson identified as 51% owner per information provided to Bridgewater Bank in connection with loans received from Bridgewater Bank. Johnson testified that Wildcat Ranch, LLC and Providence Development LLC were the owners of Providence Twin Cities, LLC. 3. Gilbertson is reportedly the owner of Wildcat Ranch, LLC. Providence Development LLC reported a debt of $311,000 to Wildcat Ranch, LLC as of June 2018. 4. Wildcat Ranch, LLC is reportedly an investor in Chetek Express Inc. Johnson testified that Wildcat Ranch, LLC was an owner of Chetek Express and previously had a loan to Chetek Express Inc., which was repaid by a loan from Providence Development, LLC. 5. Gilbertson may be an owner of Conception Capital. Conception Capital Transferred $685,000 to Capital Investments 3020, LLC (owned by Emily Johnson) on September 27, 2018. The transfer occurred three months after Gilbertson had been found guilty of wire fraud, conspiracy to comment securities fraud, and securities fraud." Receiver Report at 17-18.

42. Gregory Hjelle (Johnson's brother-in-law) was the also Manager listed with the State of Minnesota for Providence Twin Cities LLC, and personally engaged in the fraudulent conveyances of the companies in which he was involved that are referred to herein. As such, he is personally liable for the fraudulent conveyances engaged in by those entities.

**The Receiver Concluded That Johnson Also Dominates and <u>Controls JRS Real Estate Partners LLC</u>**

43. The Receiver further found the following:

"On August 22, 2018, Providence Twin Cities LLC made a $25,000 payment to JRS Real Estate Partners LLC, a subsidiary of R.L. Johnson Numismatics, Inc., which is wholly owned by Johnson, This check appears to have been deposited by R.L. Johnson Numismatics, Inc. on August 27, 2018. That same day, R.L. Johnson Numismatics, Inc. transferred $20,000 to Johnson's personal account at US Bank." Receiver Report at 6.

44. Johnson was the Manager of JRS Real Estate Partners LLC and the Registered Agent for R.L. Johnson Numismatics, Inc. listed in the Business Records of the State of Minnesota.

**The  Receiver Concluded  That  Johnson,  His Family  and Their Numerous Business Entities Intentionally  and Constructively  Intended To Make Fraudulent <u>Conveyances To Avoid Payment on The Judgment</u>**

45.    In short, the Receiver concluded:

a.    "It appears a significant amount of these assets have been transferred to Johnson's wife, Emily either directly or indirectly, to companies she reportedly owns or controls."

b.    "Despite claims of limited to no income  from any of the entities for which Johnson is an executive, manager and/or member being paid to either  Johnson,  or his wife Emily, significant personal expenses continue to be incurred  and are being funded from unknown sources."

c.    "Assets and transfers were not disclosed to the Receiver or actively concealed, including by disguising millions of dollars of distributions as loans."

d.    "Johnson  provided  direct  testimony  that  transactions  were undertaken to avoid payment on Morgan Stanley's judgment." ("Q: If any distributions are to be made, you understand they will be paid to the Receiver, is that correct? A: Correct. I can't get distributions. So my guess is there's probably not going  to be a distribution  this year.");

e.    "Johnson testified that [$100,000 of] funds were only recovered by Morgan Stanley's attorneys because he and Providence Development, LLC  made  an error." ("We had to make – because we screwed up, we had to make, like a $100,000 payment to them [Morgan Stanley], which,like made  that guy's day… So, you know we just – we just f***** up. We paid them a hundred grand. That would have come off my tab.")

f.    "Johnson's transactions with the various LLCs in which he holds an interest and members of his immediate family (Emily Johnson (wife), Heidi Hjelle (sister) and Greg Hjelle (brother-in-law)) hold an interest are subterfuge to avoid payment of the Morgan Stanly judgment. Johnson or his insiders control the LLCs. From these entities and other sources, Johnson received or personally benefited from more than $1.5 million in transfers in 2017-2018…. Thus, the Receiver recommends that claims be pursued against Providence Development, LLC, other related entities, and related persons in control of those entities."

g.      "[T]he Receiver recommends that claims be pursued against Providence Development, LLC, other related entities, including Emily Johnson, Heidi Hjelle, and Gregory Hjelle." Receiver Report at 22.

Receiver Report at 7, 9, 18, 19, and 22.

46.      The Trustee brings this action against E. Johnson, H. Hjelle, G. Hjelle, Gilbertson, and their various alter ego companies because of their numerous fraudulent transfers under 11 U.S.C. §§548 and 544, and Minnesota's Uniform Voidable Transactions Act, §§ 513.44(a)(1) and (a)(2), 513.45(a), and 513.45(b). The Debtor is insolvent, and he has failed to pay his debt to Morgan Stanley when due despite no bona fide dispute as to his debt under the FINRA Award. Because each of the defendants intentionally took part in the Debtor's scheme to fraudulently convey assets to frustrate enforcement of the Judgment, and the Trustee's administration of the estate, they each should be found liable, jointly and severally, for the claims in this case.

## FIRST CAUSE OF ACTION (Minn. Stat. § 513.44(a)(1) and (b))

47.      Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

48.      The transfers of money, assets, and other property alleged herein constitute fraudulent conveyances in violation of Minnesota's Uniform Voidable Transactions Act, Minn. Stat. § 513.44(a)(1), in that the Debtor and the other Defendants transferred, received and distributed money, assets, and other property with the intent to hinder, delay and defraud Morgan Stanley as a judgment creditor of Christopher Johnson, and the Trustee in this case. These transfers bear numerous badges of fraud under § 513.44(b), including: (i) Defendants were all family members and other insiders of the Debtor, (ii) the Debtor retained de facto

possession and control of the transferred assets after the transfers, (iii) the transfers were substantially all of the Debtor's assets and (iv) the transfers occurred either while the Debtor was a Respondent in the FINRA arbitration, or after entry of the FINRA Award, or after entry of the Judgment. The Debtor's fraud is evidenced both directly and constructively under § 513.44(a) and (b).

49.     The fraudulent transfers were made by Defendants individually and through business entities (such as Providence Development) that were used as Defendants' alter egos to benefit themselves and the Debtor. Specifically, the Debtor and the other individual Defendants dominated and controlled each of the LLCs or companies named as Defendants herein and failed to observe corporate formalities in their operations thereof to benefit themselves such that these entities are their alter egos. That is to say, they failed to pay dividend distributions to the Debtor or other named shareholders or members of the Defendant companies and instead disguised such as personal loans to themselves and the Debtor; siphoned funds from the business entities in their capacities as dominant shareholders, members, managers and officers to benefit themselves and the Debtor; failed to maintain corporate records so as to obfuscate the foregoing frauds; and in short operated the business entities merely as a facade for their individual dealings, to defraud the Debtor's creditors, such as Morgan Stanley, and the Trustee in this case, and to unjustly benefit themselves and the Debtor.

50.     Furthermore, under § 513.44(b)(1), Plaintiff may recover judgment for the valueof the assets transferred to satisfy her claim from any of (i) the first transferee of the assets or the persons for whose benefit the transfer was made, or (ii) an immediate or mediate transferee of the first person.

2591286                                             16

51.    By reason of the foregoing, the said conveyances are voidable and should be set aside, and a money judgment should be entered against each of the Defendants, jointly and severally, for an amount to be determined at trial, but not less than the amount of the claims filed in this case.

### SECOND CAUSE OF ACTION (Minn. Stat. § 513.44(a)(2))

52.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

53.    The transfers of money, assets and other property alleged herein constitute fraudulent conveyances in violation of Minnesota's Uniform Voidable Transactions Act, Minn. Stat. § 513.44(a)(2), in that the Debtor and the Defendants transferred, received and distributed monies and other assets without receiving reasonably equivalent value in exchange for the transfers in question, which (i) resulted in the Debtor's assets being unreasonably small in relation to the size of the transaction and (ii) was intended to leave the Debtor with or to incur debts that the Debtor and the other Defendants knew or reasonably should have known would be larger than the Debtor's ability to pay, as the debtor, after such transfers.

54.    The fraudulent transfers were made by Defendants individually and through business entities (such as Providence Development) that were used as Defendants' alter egos to benefit themselves and the Debtor. Specifically, the Debtor and the other individual Defendants dominated and controlled each of the LLCs or companies named as Defendants herein and failed to observe corporate formalities in their operations thereof to benefit themselves such that these entities are their alter egos. That is to say, they failed to pay dividend distributions to the Debtor or other named shareholders or members of the Defendant companies and instead disguised such as personal loans to themselves and the Debtor;

2591286                                        17

siphoned funds from the business entities in their capacities as dominant shareholders, members, managers and officers to benefit themselves and the Debtor; failed to maintain corporate records so as to obfuscate the foregoing frauds; and in short operated the business entities merely as a facade for their individual dealings, to defraud the Debtor's creditors, such as Morgan Stanley, and the Trustee in this case, and to unjustly benefit themselves and the Debtor.

55.     Furthermore, under § 513.44(b)(1), Plaintiff may recover judgment for the value of the asset transferred to satisfy its claim from any of (i) the first transferee of the assets or the persons for whose benefit the transfer was made, or (ii) an immediate or mediate transferee of the first person.

56.     By reason of the foregoing, the said conveyances are voidable and should be set aside, and a money judgment should be entered against each of the Defendants, jointly and severally, for an amount to be determined at trial, but not less than the amount of the claims filed in this case.

## THIRD CAUSE OF ACTION (Minn. Stat. § 513.45(a))

57.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

58.     The transfers of money, assets, and other property alleged herein constitute fraudulent conveyances in violation of Minnesota's Uniform Voidable Transactions Act, Minn. Stat. § 513.45(a), in that the Debtor and Defendants transferred, received and distributed monies without receiving reasonably equivalent value in exchange for the transfers while the Debtor was insolvent at the time of the transfers, or which transfers caused the Debtor to became insolvent as a result of the transfers.

2591286                                               18

59.     The fraudulent transfers were made by Defendants individually and through business entities (such as Providence  Development) that were used as Defendants' alter egos to benefit themselves and the Debtor. Specifically, the Debtor and the other individual Defendants dominated and controlled each of the LLCs or companies named as Defendants herein and failed to observe corporate formalities in their operations  thereof to benefit themselves such that these entities are their alter egos. That is to say, they failed to pay dividend distributions to the Debtor or other named shareholders or members of the Defendant companies and instead disguised such as personal loans to themselves and the Debtor; siphoned funds from the business entities in their capacities as dominant shareholders, members, managers and officers to benefit themselves and the Debtor; failed to maintain corporate records so as to obfuscate the foregoing frauds; and in short operated the business entities merely as a facade for their individual dealings, to defraud the Debtor's creditors, such as Morgan Stanley, and the Trustee in this case, and to unjustly benefit  themselves and the Debtor.

60.     Furthermore, under § 513.44(b)(1),  Plaintiff may recover judgment for the valueof the asset transferred to satisfy its claim from any of (i) the first transferee of the assets or the persons  for  whose benefit the transfer was made, or (ii) an immediate or mediate transferee of the  first  person.

61.     By reason of the foregoing, the said conveyances are voidable and should be set aside, and a money judgment should be entered against each of the Defendants, jointly and severally, an amount to be determined at trial, but not less than the amount of the claims filed in this case.

**FOURTH CAUSE OF ACTION (Minn. Stat. § 513.45(b))**

62.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

63.     The transfers of money, assets, and other property alleged herein constitute fraudulent conveyances in violation of Minnesota's Uniform Voidable Transactions Act, Minn. Stat. § 513.44(b), in that the Debtor and Defendants transferred, received and distributed monies and other assets to and from the Debtor while he was insolvent and while Defendants were insiders with reasonable cause to believe that the Debtor was insolvent and owing an antecedent debt to Morgan Stanley.

64.     The fraudulent transfers were made by Defendants individually and through business entities (such as Providence Development) that were used as Defendants' alter egos to benefit themselves and the Debtor. Specifically, the Debtor and the other individual Defendants dominated and controlled each of the LLCs or companies named as Defendants herein and failed to observe corporate formalities in their operations thereof to benefit themselves such that these entities are their alter egos. That is to say, they failed to pay dividend distributions to Johnson or other named shareholders or members of the Defendant companies and instead disguised such as personal loans to themselves and the Debtor; siphoned funds from the business entities in their capacities as dominant shareholders, members, managers and officers to benefit themselves and Johnson; failed to maintain corporate records so as to obfuscate the foregoing frauds; and in short operated the business entities merely as a facade for their individual dealings, to defraud the Debtor's creditors, such as Morgan Stanley, and the Trustee in this case, and to unjustly benefit themselves and Johnson.

2591286                                                20

65. Furthermore, under §513.44(b)(1), Plaintiff may recover judgment for the value of the assets transferred to satisfy its claim from any of (i) the first transferee of the assets or the persons for whose benefit the transfer was made, or (ii) an immediate or mediate transferee of the first person.

66. By reason of the foregoing, the said conveyances are voidable and should be set aside, and a money judgment should be entered against each of the Defendants, jointly and severally, for an amount to be determined at trial, but not less than the amount of the claims filed in this case.

### FIFTH CAUSE OF ACTION (11 U.S.C. §548)

67. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

68. Some of the transfers of the money, assets, and other property alleged herein were made within two years before the filing of this case.

69. Some of the transfers of the money, assets, and other property alleged herein were made with the actual intent to hinder, delay, or defraud Morgan Stanley and other creditors.

70. The fraudulent transfers were made by Defendants individually and through business entities (such as Providence Development) that were used as Defendants' alter egos to benefit themselves and the Debtor. Specifically, the Debtor and the other individual Defendants dominated and controlled each of the LLCs or companies named as Defendants herein and failed to observe corporate formalities in their operations thereof to benefit themselves such that these entities are their alter egos. That is to say, they failed to pay dividend distributions to the Debtor or other named shareholders or members of the

2591286 21

Defendant companies and instead disguised such as personal loans to themselves and the Debtor; siphoned funds from the business entities in their capacities as dominant shareholders, members, managers and officers to benefit themselves and the Debtor; failed to maintain corporate records so as to obfuscate the foregoing frauds; and in short operated the business entities merely as a facade for their individual dealings, to defraud the Debtor's creditors, such as Morgan Stanley, and the Trustee in this case, and to unjustly benefit themselves and the Debtor.

71. By reason of the foregoing, the said conveyances are voidable and should be set aside, and a money judgment should be entered against each of the Defendants, jointly and severally, for an amount to be determined at trial, but not less than the amount of the claims filed in this case.

### SIXTH CAUSE OF ACTION (11 U.S.C. §548)

72. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

73. Some of the transfers of the money, assets, and other property alleged herein were made within two years before the filing of this case.

74. With respect to certain of the transfers of the money, assets, and other property alleged herein, the Debtor received less than a reasonably equivalent value in exchange for such transfer or obligation, and was insolvent on the date the transfer was made or became insolvent as a result of such transfer or obligation; was engaged in business or a transaction, or was about to engage is business or a transaction, for which any property remaining was an unreasonably capital; intended to incur, or believed that the debtor would incur, debts that were beyond the debtor's ability to pay as such debts matured.

75.     The fraudulent transfers were made by Defendants individually and through business entities (such as Providence Development) that were used as Defendants' alter egos to benefit themselves and the Debtor. Specifically, the Debtor and the other individual Defendants dominated and controlled each of the LLCs or companies named as Defendants herein and failed to observe corporate formalities in their operations  thereof to benefit themselves such that these entities are their alter egos. That is to say, they failed to pay dividend distributions to the Debtor or other named shareholders or members of the Defendant companies and instead disguised such as personal loans to themselves and the Debtor; siphoned funds from the business entities in their capacities as dominant shareholders, members, managers and officers to benefit themselves and the Debtor; failed to maintain corporate records so as to obfuscate the foregoing frauds; and in short operated the business entities merely as a facade for their individual dealings, to defraud the Debtor's creditors, such as Morgan Stanley, and the Trustee in this case, and to unjustly benefit themselves and the Debtor.

76.     By reason of the foregoing, the said conveyances are voidable and should be set aside, and a money judgment should be entered against each of the Defendants, jointly and severally, for an amount to be determined at trial, but not less than the amount of the claims filed in this case.

**WHEREFORE**, the Plaintiff requests judgment as follows against Defendants E. Johnson, H. Hjelle, G. Hjelle, Gilbertson, Providence Development, Providence Management, Chetek, Numismatics, Inc., Providence Twin Cities, JRS Real Estate Partners, and Wild Cat Ranch as follows:

2591286                                                     23

(1)     Jointly and severally, for an amount to be determined at trial, but not less than

the amount of the claims filed in this case; and

(2)     Such other and further relief as is just and proper.

**MESSERLI & KRAMER P.A.**

Dated:  May 27, 2022

*s/ Terri A. Running*
Terri A. Running (#238338)
Kevin Hofman (#179978)
100 South Fifth Street, Suite 1400
Minneapolis, MN 55402
Telephone:  (612) 672-3600
trunning@messerlikramer.com
khofman@messerlikramer.com

**ATTORNEYS FOR JULIA A.
CHRISTIANS, CHAPTER 7 TRUSTEE**